**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska | ) |
| limited liability company d/b/a Assist2Sell, and | ) |
| JULIE CARPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COLDWELL BANKER TOWN & COUNTRY REALTY | ) |
| OF KEARNEY, LLC, a Nebraska limited liability | ) |
| company d/b/a Coldwell Banker, | ) |
| MATTHEW MEISTER, KERRY PEARSON, | ) |
| BETTY WARREN, WIEBUSCH & ASSOCIATES, INC., | ) |
| a Nebraska corporation d/b/a Century 21 Midlands,) |
| KEARNEY REALTY, LLC, a Nebraska limited liability | ) |
| company d/b/a Kearney Realty, SOBATKA, ROPER, | ) |
| SCHUMACHER & COMPANY, NP REALTY, INC., | ) |
| a Nebraska corporation d/b/a NP Realty, | ) |
| BUFFALO COUNTY BOARD OF REALTORS, TARA | ) |
| ROST, NEBRASKA REALTORS ASSOCIATION and | ) |
| NEBRASKA REAL ESTATE COMMISSION, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT AT LAW AND EQUITY

NOW COME the Plaintiffs, PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska limited

liability company d/b/a Assist2Sell (hereinafter "PROGRESSIVE") and JULIE CARPER (hereinafter

"CARPER"), by and through GLASER LAW, their attorney, and complaining of the Defendants,

COLDWELL BANKER TOWN & COUNTRY REALTY OF KEARNEY, LLC, a Nebraska limited liability

company d/b/a Coldwell Banker (hereinafter "COLDWELL"), MATTHEW MEISTER (hereinafter

"MEISTER"), KERRY PEARSON (hereinafter "PEARSON"), BETTY WARREN (hereinafter

"WARREN"), WIEBUSCH & ASSOCIATES, INC., a Nebraska corporation d/b/a Century 21

Midlands (hereinafter "CENTURY"), KEARNEY REALTY, LLC, a Nebraska limited liability company

d/b/a Kearney Realty (hereinafter "KEARNEY"), SOBATKA, ROPER, SCHUMACHER & COMPANY (hereinafter "SOBATKA"), NP REALTY, INC., a Nebraska corporation d/b/a NP Realty (hereinafter "NP"), BUFFALO COUNTY BOARD OF REALTORS (hereinafter "BOARD"), TARA ROST (hereinafter "ROST"), NEBRASKA REALTORS ASSOCIATION (hereinafter "NRA") and NEBRASKA REAL ESTATE COMMISSION (hereinafter "NREC"), state and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for compensatory, punitive and injunctive relief arising from illegal efforts to control the real estate broker commission rates in the Kearney, Nebraska area by (1.) attempting to intimidate Plaintiffs into abandoning the discount broker and flat-fee business model of real estate sales representation, which was siphoning business from the Defendant agencies, who have "traditional" business models in the real estate industry; (2.) refusing to deal with Plaintiff in retaliation for Plaintiff's decision to offer a less-expensive, alternative business model, by refusing to show properties to Plaintiffs' clients or list them in their own MLS sheets, and in refusing to show Plaintiffs' clients listing; (3.) initiating trumped-up ethics complaints against Plaintiffs, in an effort to tarnish their record and reputation, and to eventually expel PROGRESSIVE and CARPER from the BOARD and NRA, which effectively ran Plaintiffs out of business; (4.) adversely affecting Plaintiffs' relationships with its clients by interference and solicitation, and by false statements about Plaintiffs to other realtors, would-be realtors and the relevant market community.

## JURISDICTION

2.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1331, which gives the United States District Courts original jurisdiction of all matters arising under the

laws under the United States.  This is a matter brought pursuant to Section 2 of the Sherman Act (15 U.S.C. 1, *et seq.*).

3.      This Court also has ancillary jurisdiction over the remaining Nebraska state claims in this Complaint, pursuant to 28 U.S.C. 1367(a), for the other claims are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

4.      Venue is proper in this Court under 28 U.S.C. 1391(b)(1) and (2), for all Defendants reside in this District, and a substantial part of the acts and/or omissions that are the subject of this suit occurred in this District.  Additionally, this Court is the proper venue for this matter under 15 U.S.C. 15(a).

**PARTIES**

5.      PROGRESSIVE is a Nebraska limited liability company operating under the trade name Assist2Sell.  Assist2Sell is a franchisee of a national franchisor, which features an alternative model to traditional real estate transactions, including flat fee discount realtor services, and various levels of available services at different flat fee price points.

6.      CARPER is a natural person, who until recently had been a Nebraska-licensed real estate broker for three years, and a Nebraska-licensed real estate appraiser for 8 years.  Prior to that, she was a Real Estate Bankruptcy Specialist at Mellon Mortgage.  She has won awards in the real estate industry, and was even employed by the Defendant COLDWELL for 5 years.  At all relevant times, she was the member and manager of PROGRESSIVE.  At all relevant times, she was a resident of Kearney, Buffalo County, Nebraska.

7.     COLDWELL is a limited liability company operating under the laws of the State of Nebraska, has offices in Kearney, Nebraska, and is in the business of representing clients in their sales and purchases of real estate.  COLDWELL is considered the largest realtor in the Kearney and Buffalo County areas.

8.     MEISTER is a natural person residing in or near the city of Kearney, County of Buffalo, State of Nebraska.  At all relevant times, MEISTER was a licensed real estate agent in the State of Nebraska, and was employed by, and/or acting as an agent of, COLDWELL.

9.     PEARSON is a natural person residing in or near the city of Kearney, County of Buffalo, State of Nebraska.  At all relevant times, PEARSON was a licensed real estate agent in the State of Nebraska, and was employed by, and/or acting as an agent of, COLDWELL.

10.     WARREN is a natural person residing in or near the city of Kearney, County of Buffalo, State of Nebraska.  At all relevant times, WARREN was a licensed real estate broker in the State of Nebraska, and was the owner of, employed by, and/or acting as an agent of, COLDWELL.

11.     CENTURY is a Nebraska corporation in good standing, has its principal place of business in the City of Kearney, County of Buffalo, State of Nebraska, and is in the business of representing clients in their sales and purchases of real estate.

12.     KEARNEY REALTY, LLC (hereinafter "KEARNEY") is a Nebraska corporation in good standing, has its principal place of business in the City of Kearney, County of Buffalo, State of Nebraska, and is in the business of representing clients in their sales and purchases of real estate.

13.     SOBOTKA is a Nebraska corporation in good standing, has its principal place of business in the City of Kearney, County of Buffalo, State of Nebraska, and is in the business of representing clients in their sales and purchases of real estate.

14.     NP is a Nebraska corporation in good standing, has its principal place of business in the City of Kearney, County of Buffalo, State of Nebraska, and is in the business of representing clients in their sales and purchases of real estate.

15.     BOARD is an organization, headquartered in the City of Kearney, County of Buffalo, State of Nebraska, which provides and promotes programs, products and services to enhance licensed Realtors' ability to conduct their individual businesses successfully. BOARD takes collective action to promote extension and preservation of the right to own, transfer and use real property. BOARD also engages in education and strict enforcement of the code of ethics in order to enhance the professionalism and image of the licensed Realtor for the benefit of the community. Also, BOARD serves as a governing body to enforce the regulations in the code of ethics promulgated by the National Association of Realtors, and serves to resolve disputes between licensed Realtors over alleged violations of the NAR regulations. At all relevant times, agents of COLDWELL held positions on the Board of Directors, and other influential positions, within BOARD. MEISTER was its President in 2006.

16.     ROST is a natural person residing in or near the City of Kearney, County of Buffalo, State of Nebraska. At all relevant times, she was the Association Executive of BOARD.

17.     NRA is an organization, headquartered in the City of Lincoln, County of Lancaster, State of Nebraska. The objectives of the Association are, in general, to establish and maintain ethical conduct by its members and their affiliates by requiring compliance with the

National Association of Realtors' Code of Ethics and Code of Equal Opportunity . . . ." Also, NRA serves as a governing body to enforce the regulations in the code of ethics promulgated by the National Association of Realtors, and serves to resolve disputes between licensed Realtors over alleged violations of the NAR regulations.  At all relevant times, MEISTER was employed by NRA, and has served on various committees and as Regional Chairman.

18.     NREC is a Nebraska state government agency with its headquarters located in the City of Lincoln, County of Lancaster, State of Nebraska.  NREC's mission is "to protect the public interest of Nebraska citizens through the efficient and effective administration of the Nebraska Real Estate License Act and the registration of Time-Share Projects, Subdivided Land Projects, Retirement Subdivisions and Communities, and Membership Campgrounds."

### FACTUAL BACKGROUND

19.     The dispute between PROGRESSIVE and CARPER on one side, and the Defendants on the other, began in approximately 2006.  CARPER and PROGRESSIVE had just opened an Assist2Sell franchise, which offered discount real estate commission rates and a flat fee payment system, which was tiered depending on the amount of services the client wished to purchase.  PROGRESSIVE and CARPER had just opened a Kearney, Nebraska office, to better service the relevant market area.

20.     When CARPER and PRORESSIVE began offering discount services, this affected the other brokers in the Kearney and Buffalo County area in "losing" potential listings as seller's agents.

21.     Despite this, when PROGRESSIVE listed a home, seller's agents would often receive the same commission as is typical in the Buffalo County area, and their commission

would not be affected by the fact that PROGRESSIVE agents were working at a discount and/or for a flat fee.

22.     In response to this competitive threat, the Defendants COLDWELL, MEISTER, NP, KEARNEY, SOBOTKA, CENTURY and BOARD entered into an agreement whereby they would, by and through their agents and/or employees, retaliate against PROGRESSIVE in every facet of its business. These Defendants, by and through their agents and/or employees, refused, and continue to refuse, to present offers on their own listings from potential purchasers represented by PROGRESSIVE.  Defendants further discouraged their seller clients from accepting offers from PROGRESSIVE's purchaser clients, by disparaging PROGRESSIVE. Additionally, the Defendants agreed not to show PROGRESSIVE's listings to their own clients. Further, the Defendants agreed to solicit and prosecute baseless ethics complaints against CARPER and PROGRESSIVE and its agents to intimidate them and coerce them into abandoning Assist2Sell and/or its business model and/or put CARPER and PROGRESSIVE out of business.

23.     On September 17, 2006, MEISTER contacted CARPER and stated he had many complaints against her, and would like her to comply so he did not have to handle so many complaints.  On that same day, MEISTER sent CARPER a letter regarding these issues, and later that day he stopped by her office.  MEISTER told CARPER that "if we all played the game, we could all make money."  The "game" referred to was the fixing of real estate commission rates.

24.     In October, 2006, COLDWELL filed a baseless ethics complaint to the BOARD, claiming PROGRESSIVE was not naming all the listing companies on its spec and MLS sheets. Ironically, COLDWELL would actually commit this exact same violation against PROGRESSIVE.

7

25.     In or around this time, SOBOTKA took out a newspaper advertisement stating "Discount Commissions, Remember this, you get what you pay for."   This public advertisement defamed CARPER and PROGRESSIVE and was an effort to stifle competition from the discount broker PROGRESSIVE.

26.     On or about October 10, 2006, COLDWELL through WARREN also tried to run CARPER out of the appraisal business, by telling a loan officer at Bank of the West that COLDWELL would not work with them if they used CARPER for appraisal services since she was a competitor and a discount broker.  CARPER's appraisal business significantly declined since that statement, from $18,000.00 average annually to $1200.00 in 2007, with no business from any other banks as well.

27.     In December, 2006, COLDWELL refused and failed to print PROGRESSIVE's MLS listings on its master MLS sheet, in violation of MLS rules.  Instead, COLDWELL listed PROGRESSIVE as "Other Companies."  In January, 2007, violating truth-in-advertising laws, COLDWELL simply deleted PROGRESSIVE's MLS listings altogether.

28.     On June 25, 2007, NP directly solicited PROGRESSIVE's client, stating that "if anything falls short, give us a call."  This was in the driveway of an open house CARPER was hosting for the client at the time.

29.     On July 6, 2007, CENTURY told a previous PROGRESSIVE client "Beware, Assist2Sell listings won't be on MLS."  This statement was anticompetitive and defamatory, as it showed evidence of a boycott, and stated PROGRESSIVE was not capable of performing sales in the profession.

30.     In July, 2007, CARPER and PROGRESSIVE filed a formal complaint to the NREC regarding COLDWELL's deletion of PRGOGRESSIVE's MLS listings from COLDWELL's MLS sheets. In November, 2007, the NREC improperly dismissed the complaint with prejudice.

31.     On August 24, 2007, BOARD passed anticompetitive new rules that PROGRESSIVE could no longer advertise its logo on the MLS format, and that lock boxes could no longer be used on non-MLS listings.  MEISTER was in attendance at this meeting.  BOARD then sent an e-mail to all members that PROGRESSIVE was not in compliance with the new policy; this was the first time such an e-mail regarding by-laws had ever been sent.

32.     In September, 2007, MEISTER and COLDWELL improperly and illegally solicited two signed clients of PROGRESSIVE.  When CARPER complained, MEISTER improperly used his influence with the NREC to lodge ethics complaints against CARPER.  MEISTER and Marlene Bader of COLDWELL also directly solicited PROGRESSIVE clients in October, 2007 and filed baseless ethics complaints against CARPER and PROGRESSIVE in December, 2007 regarding the listings so as to stifle complaints from CARPER regarding the solicitation.

33.     In October, 2007, BOARD passed a new MLS rule that the MLS committee may review expired, extended or renewal of listings for violations.  The purpose and application of this rule was arbitrary and harassing in nature, and designed to put CARPER and PROGRESSIVE both out of the MLS and out of business.

34.     In October, 2007, BOARD published an "Operation Tip Off" memo to its members, which disparaged the "so-called" discount broker.  Such a memo defamed CARPER and PROGRESSIVE as not being a true real estate agency, and sought to stifle the competition PROGRESSIVE brought to BOARD's traditional members.  Such a memo facilitated and

encouraged the BOARD's members to take action and boycott CARPER and PROGRESSIVE because they charged lesser commission rates to the public.

35.     In October, 2007, MEISTER had told an ethics class about CARPER: "It will take her a lot of money to defend her case in court and she will be out of business before anything is determined." This statement to (ironically) an ethics class violated MLS confidentiality rules.

36.     In November, 2007, based on new audit rules MEISTER and BOARD passed in October, 2007, MEISTER filed a baseless complaint with the BOARD, for the purposes of allowing the BOARD to go through all of PROGRESSIVE's past records in an effort to find ethics violations. The BAORD assists MEISTER with this complaint and attempts to audit PROGRESSIVE's files. These actions were harassing, and BOARD's assistance in MEISTER's efforts demonstrated an anticompetitive agreement.

37.     At one point, MEISTER admitted to CARPER that the ethics complaints were not valid, but then in November 2007 aided Kerri Pearson in filing such a complaint against CARPER with the NRA. MEISTER then used undue influence with the NRA to find an ethics violation against CARPER, without a factual basis or due process to CARPER, and despite the complaint falling outside the 180 day NAR deadline for filing.

38.     On December 7, 2007, COLDWELL by and through PEARSON improperly filed a *lis pendens* notice against the sellers of 805 W. 27th Street, Kearney, NE, who were clients of PROGRESSIVE, as a form of harassment. The court vacated the notice, and PEARSON was found guilty of ethics violations regarding these actions, and had her license censured.

39.     On December 17, 2007, PEARSON and COLDWELL filed an ethics complaint against PROGRESSIVE and CARPER with the NREC regarding the 805 W. 27th Street property.

Though the complaint was eventually dismissed, PROGRESSIVE had to pay the seller's legal fees incurred as a result of the false *lis pendens* notice.

40.    On January 15, 2008, MEISTER and BOARD proposed new sanctions rules for those refusing to cooperate with the new by-laws regarding submitting documents for audits. This proposal was directly targeted at PROGRESSIVE and CARPER and was in furtherance of the harassment and capriciousness employed by the Defendants.

41.    On or about February 20, 2008, NP refused to show a listing at 1106 E. 48th Street, Kearney, NE to PROGRESSIVE clients due to their being PROGRESSIVE clients.  It was not until June, 2008, that CARPER personally had to show them the home.

42.    In March, 2008, MEISTER filed a complaint against CARPER and PROGRESSIVE to the NRA, complaining of PROGRESSIVE's business model and operations.  The NREC went along in order to find a violation without any factual basis or due process to CARPER.

43.    On or about March 23, 2008, Barb Peterson of COLDWELL refused to show property listed by a PROGRESSIVE client at 1910 W. 36th Street, Kearney, NE, against the wishes of her own clients.  As a result, the PROGRESSIVE clients did not want to pay PROGRESSIVE.

44.    In November, 2008, MEISTER disparaged CARPER and PROGRESSIVE, and committed defamation *per se* against them, to a room of real estate agents at an ethics seminar, by stating CARPER and PROGRESSIVE had a bad business reputation and did not really provide services in the profession.

45.    On June 17, 2008, one of PROGRESSIVE's clients told CARPER that Marlene Bader of COLDWELL called and solicited his listing, stating that COLDWELL was a bigger agency and

could handle the job.  This interference was in furtherance of the boycott of PROGRESSIVE and CARPER, and was a violation of NAR rules.

46.     In September, 2008, Dick Schumacher of SOBOTKA refused to present a cash purchase offer from a PROGRESSIVE client in furtherance of the boycott against PROGRESSIVE and CARPER, even to his client's detriment, which was proven when the sellers accepted an offer that same day for $8000.00 less than that offered by the PROGRESSIVE clients.

47.     In September 25, 2008, BOARD published the MLS statistics which shows the percentage of market share in the area.  PROGRESSIVE was not on the list, which gave the false impression that the agency Defendants had a larger market share than was accurate, and that PROGRESSIVE had none, which was also inaccurate.  This was done for anticompetitive purposes, to diminish PROGRESSIVE in the market place and further the boycott against PROGRESSIVE.

48.     In October, 2008 (though CARPER did not learn of the statements until December, 2008, and had no reasonable way to learn of them sooner), MEISTER improperly defamed CARPER to a class taking a real estate Pre-Licensing course.  MEISTER told the class the falsehoods that flat fee commissions are illegal, and that a discount broker gets paid what she is worth, and that there must be agency compensation.  Specifically, MEISTER stated "We have one broker in town that she is the cheapest broker in town.  I am ok with it, she knows what her services are worth, right?  Don't we all.  If you were to trust your biggest investment, your home, to the person who says well I do it cheaper how do you suppose they are going to sell your home?  Well, you'll come down in price, by paying less for a realtor fee, you'll have less of

a realtor, that's how I see it."  Besides being defamatory to CARPER and PROGRESSIVE, they are anticompetitive as well.

49.     In addition to the above, to portray PROGRESSIVE as having an unprofessional status in the community, agents from the agency Defendants would call PROGRESSIVE clients to set up showing and then not appear.  They will take petty and unprofessional actions such as leaving the lights on and doors open, all in an effort to demonstrate to the public their opinion of the PROGRESSIVE business model.  Also, on two occasions COLDWELL backed out of valid contracts, daring PROGRESSIVE to "spend $10,000.00 in court costs contesting the validity."

50.     As part of BOARD's agreement, support and assistance in the boycott of PROGRESSIVE and CARPER, BOARD improperly, through ROST, perpetuated ethics complaints against PROGRESSIVE and CARPER, redrafted the rules to make it easier to harass PROGRESSIVE and CARPER and conduct a fishing expedition of PROGRESSIVE's records in the hope of finding something it can claim as an ethics violation, all at great financial and emotional cost to CARPER.

51.     BOARD has an enormous amount of power over a realtor who is a member. BOARD may expel members for ethics violations.  BOARD can redraft rules, such as those prohibiting non-MLS listings from using lockboxes, which allow more access to selling agents.  In fact, BOARD improperly revoked PROGRESSIVE's lockbox privileges, in violation of its rules and procedures.  Also, if any of the false ethics complaints against CARPER and PROGRESSIVE were successful, as they were, BOARD could use this as a means to expel CARPER and PROGRESSIVE from the BOARD, which would eliminate CARPER and PROGRESSIVE as competition for the agency Defendants, who control much of the policy and activities of the BOARD.

52.     In September, 2007, PROGRESSIVE had approximately 45 real estate listings. Due to the actions of MEISTER and COLDWELL, which involved the refusal to list PROGRESSIVE's MLS listings, and approximately 50 instances of complaints, phone calls, harassing memos, solicitations, and disparaging comments, by March, 2009, the number of PROGRESSIVE listings dwindled to approximately 15.  By August, 2009, during the peak season of real estate, the number of PROGRESSIVE listings was 5, due to solicitation by various agents and their stating that PROGRESSIVE was kicked out of MLS.

53.     Due to the conspired actions of BOARD, NRA, NREC, COLDWELL and MEISTER, CARPER had her real estate broker's license suspended, and PROGRESSIVE has gone out of business.

### COUNT I – SHERMAN ACT VIOLATIONS (15 U.S.C. 1 & 2) AGAINST COLDWELL, MEISTER, PEARSON, WARREN, CENTURY, KEARNEY, SOBOTKA, NP, BOARD, ROST, NREC AND NRA

54.     Plaintiffs incorporate and reallege Paragraphs 1 through 52, above, as if fully restated herein.

55.     The providing of real estate brokerage services is a relevant product within the meaning of the Act herein cited.

56.     The relevant geographic market is the Kearney and Buffalo County, Nebraska, areas, and the surrounding counties, where PROGRESSIVE and CARPER and the Defendants provide real estate brokerage services.

57.     Nevertheless, this matter involves and affects interstate commerce, due to the nature of the real estate industry, and the fact that agents of PROGRESSIVE and the agency Defendants sell real estate in Nebraska to persons moving across state lines, and they all use multi-state lenders who write federally insured loans for the purchases of properties.

58.     The Defendants are among the largest realtors in the Kearney and Buffalo County area, if not the largest, with a large percentage of the total market share.

59.     Substantial barriers exist for PROGRESSIVE, and any other discount realtor the Defendants decide to boycott, in the relevant market.

60.     The Defendants have the power, through their market share and influence within the BOARD and NRA, to control commission rates charged to consumers and to exclude any realtor who attempts to charge a consumer less of a commission, through discount rates, flat fee services, or otherwise.  This is through group boycott, and by policy and decision making within the BOARD that has the ultimate effect of shielding the Defendants and punishing the individual, non-conforming realtor.

61.     COLDWELL, CENTURY, NP, KEARNEY, SOBATKA, MEISTER, PEARSON, WARREN, BOARD, ROST, NREC and NRA have engaged in unfair anticompetitive behavior by agreeing to boycott PROGRESSIVE and CARPER and take anti-competitive steps to put them out of business, through the above-listed actions.

62.     In addition, the agency Defendants engaged in other forms of a horizontal boycott and unreasonable and unfair anti-competitive measures, by making derogatory statements about PROGRESSIVE and CARPER to other realtors, would-be realtors, clients and the public, and filing false legal notices and ethics complaints when PROGRESSIVE and CARPER asserted their rights with regards to a client.

63.     These actions violate Sections 1 and 2 of the Sherman Act (15 U.S.C. 1 & 2), in that they intentionally constitute an illegal conspiracy to conduct a group boycott of PROGRESSIVE and CARPER by the holders of a large share of the Kearney and Buffalo County,

Nebraska real estate market.  The purpose was not to reduce costs or increase performance, nor was there any legitimate business justification for these actions.  The boycott and other actions were solely anti-competitive measures to force PROGRESSIVE and CARPER, a small realtor charging less commission to consumers, out of the market.

64.    As a proximate result of the Defendants' actions, PROGRESSIVE and CARPER have been damaged, in the loss of current and potential clients, including but not limited to those listed above, the loss of sales and commissions, and in reputation.  PROGRESSIVE has been driven out of business, and CARPER has been driven from the real estate profession in Nebraska.  In addition, as a result of these Defendants' actions, the real estate market in the Kearney and Buffalo County areas have suffered from artificially high commission charges.

65.    As a proximate result of the Defendants' actions as described above, PROGRESSIVE and CARPER have lost considerable sums in lost sales commissions, and had their reputation smeared and tarnished throughout the Kearney and Buffalo County areas.  This has been devastating to PROGRESSIVE, which went out of business, and CARPER, who has been driven from the real estate profession in Nebraska.

66.    As a proximate result of the Defendants' actions, PROGRESSIVE and CARPER have been damaged in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska limited liability company d/b/a Assist2Sell, and JULIE CARPER, request this Honorable Court to enter judgment in their favor and against the Defendants, COLDWELL BANKER TOWN & COUNTRY REALTY OF KEARNEY, LLC, a Nebraska limited liability company d/b/a Coldwell Banker,

MATTHEW MEISTER, KERRY PEARSON, BETTY WARREN, WIEBUSCH & ASSOCIATES, INC., a

Nebraska corporation d/b/a Century 21 Midlands, KEARNEY REALTY, LLC, a Nebraska limited

liability company d/b/a Kearney Realty, SOBATKA, ROPER, SCHUMACHER & COMPANY, NP

REALTY, INC., a Nebraska corporation d/b/a NP Realty, BUFFALO COUNTY BOARD OF REALTORS,

TARA ROST, NEBRASKA REALTORS ASSOCIATION and NEBRASKA REAL ESTATE COMMISSION ,

for an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus all statutory

damages allowed under the Sherman Act (per 15 U.S.C. 15),  including reasonable attorney's

fees, a recoupment of all costs expended in prosecuting this suit, and any and all further relief

as this court deems just and proper.

### COUNT II – VIOLATIONS OF NEBRASKA ANTITRUST ACT AGAINST COLDWELL, MEISTER, PEARSON, WARREN, CENTURY, KEARNEY, SOBOTKA, NP, BOARD, ROST AND NRA

67.     Plaintiffs incorporate and reallege Paragraphs 1 through 53, above, as if fully

restated herein.

68.     Plaintiffs incorporate and reallege Paragraphs 54 through 62 of Count I, above,

as if fully restated herein.

69.     COLDWELL, MEISTER, PEARSON, WARREN, CENTURY, KEARNEY, SOBOTKA, NP,

BOARD, ROST, NREC and NRA engaged in unfair anticompetitive behavior by agreeing to

boycott PROGRESSIVE and CARPER, by their refusal to allow PROGRESSIVE and CARPER to show

properties listed by the Defendants, refusal to show their clients properties listed by

PROGRESSIVE, and/or soliciting and prosecution of baseless and false ethics complaints.

70.     In addition, the agency and realtor Defendants engaged in other forms of a

horizontal boycott, by making derogatory statements about PROGRESSIVE and CARPER to other

realtors, would-be realtors, clients and the community, and filing false legal notices and ethics

complaints when PROGRESSIVE and CARPER asserted their rights with regards to a client.

71.     The agency and realtor Defendants' conduct, as well as that of BOARD and ROST,

violates Section 59-802 the Nebraska Revised Statutes (N.R.S. 59-802) (hereinafter "the NE

Act"), by virtue of boycotting PROGRESSIVE and CARPER for refusing to charge the "going rate"

for commissions for the sale/purchase of residential real property, and offering alternative

discount and/or flat fee commission rates.

72.     The agency and realtor Defendants' conduct, as well as that of BOARD and ROST,

namely the agreement to boycott PROGRESSIVE and CARPER and drive them out of business for

refusing to offer the same business model and commission rates as all other BOARD members,

and/or refusing to allow PROGRESSIVE and CARPER to show properties listed by the

Defendants, violates both N.R.S. 59-801 and 59-805 for being a conspiracy to unreasonably

restrain trade and commerce and drive PROGRESSIVE and CARPER out of business.

73.     Said conduct of the agency and realtor Defendants, as well as BOARD and ROST,

also violates N.R.S. 59-802 because their actions constitute attempts to create a monopoly on

the Rockford area real estate market for the purposes of excluding competition.

74.     These actions not only severely damaged PROGRESSIVE and CARPER, but also

damage the entire real estate market in the Kearney and Buffalo County areas

75.     This matter involves and affects interstate commerce, due to the nature of the

real estate industry, and the fact that agents of PROGRESSIVE and the Defendants are licensed

to and do sell real estate to persons moving across state lines, and they all use multi-state

lenders who write federally insured loans for the purchases of properties.

18

76.     As a proximate result of the Defendants' actions, PROGRESSIVE and CARPER have been damaged, in the loss of current and potential clients, including but not limited to those listed above, the loss of sales and commissions, and in reputation.  PROGRESSIVE has been driven out of business, and CARPER has been driven from the real estate profession in Nebraska.  In addition, as a result of these Defendants' actions, the real estate market in the Kearney and Buffalo County areas have suffered from artificially high commission charges.

77.     As a proximate result of the Defendants' actions as described above, PROGRESSIVE and CARPER have lost considerable sums in lost sales commissions, and had their reputation smeared and tarnished throughout the Kearney and Buffalo County areas.  This has been devastating to PROGRESSIVE, which went out of business, and CARPER, who has been driven from the real estate profession in Nebraska.

78.     As a proximate result of the Defendants' actions, PROGRESSIVE and CARPER have been damaged in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska limited liability company d/b/a Assist2Sell, and JULIE CARPER, request this Honorable Court to enter judgment in their favor and against the Defendants, COLDWELL BANKER TOWN & COUNTRY REALTY OF KEARNEY, LLC, a Nebraska limited liability company d/b/a Coldwell Banker, MATTHEW MEISTER, KERRY PEARSON, BETTY WARREN, WIEBUSCH & ASSOCIATES, INC., a Nebraska corporation d/b/a Century 21 Midlands, KEARNEY REALTY, LLC, a Nebraska limited liability company d/b/a Kearney Realty, SOBATKA, ROPER, SCHUMACHER & COMPANY, NP REALTY, INC., a Nebraska corporation d/b/a NP Realty, BUFFALO COUNTY BOARD OF REALTORS,

TARA ROST, NEBRASKA REALTORS ASSOCIATION and NEBRASKA REAL ESTATE COMMISSION ,

for an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus all statutory

damages allowed under N.R.S. 59-821, including reasonable attorney's fees, a recoupment of all

costs expended in prosecuting this suit, and any and all further relief as this court deems just

and proper.

### COUNT III – DEFAMATION AGAINST COLDWELL AND MEISTER

79.     Plaintiffs incorporate and reallege Paragraphs 1 through 53, above, as if fully

restated herein.

80.     The false statements against CARPER and PROGRESSIVE by COLDWELL and

MEISTER were defamation *per se*, as they allege a want of professional integrity and

competence on the part of PROGRESSIVE and CARPER, as well as a level of dishonesty in that

the statements falsely allege that PROGRESSIVE and CARPER charge for services they do not

provide or that are worthless.

81.     The false statements were widely publicized to other areas realtors, would-be

realtors, clients and the community, and, with MEISTER as an instructor for pre-licensing and

ethics, the statements are reasonably believed to have been publicized state-wide.

82.     As a proximate result of the false and derogatory statements by the agency and

individual Defendants as described herein, PROGRESSIVE went out of business, and CARPER

was driven from the Nebraska real estate industry, and has been damaged in an amount to

exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska limited

liability company d/b/a Assist2Sell, and JULIE CARPER, request this Honorable Court to enter

judgment in their favor and against the Defendants, COLDWELL BANKER TOWN & COUNTRY

REALTY OF KEARNEY, LLC, a Nebraska limited liability company d/b/a Coldwell Banker and

MATTHEW MEISTER, for an amount to exceed FIVE HUNDRED THOUSAND DOLLARS

($500,000.00), plus a recoupment of all costs expended in prosecuting this action, and any and

all further relief as this court deems appropriate, including punitive damages.

### COUNT IV - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AND TORTIOUS INTERFERENCE WITH CONTRACT AGAINST COLDWELL, MEISTER, PEARSON, WARREN, SOBOTKA, CENTURY AND NP

83.     Plaintiffs incorporate and reallege Paragraphs 1 through 53 above, as if fully

restated herein.

84.     PROGRESSIVE had valid business relationships with its clients, which CARPER and

her agents took great care to cultivate, and about which the Defendants were aware.

85.     COLDWELL, by and through WARREN, MEISTER and PEARSON, as well as

SOBTOKA, CENTURY and NP interfered with those relationships and/or expectancies by

committing intentional and unjustified acts of interference.

86.     As a proximate result of the tortuous interference with the business

expectancies and contracts of PROGRESSIVE by the agency and individual Defendants as

described herein, PROGRESSIVE went out of business, and CARPER was driven from the

Nebraska real estate industry, and has been damaged in an amount to exceed FIVE HUNDRED

THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, PROGRESSIVE BUYERS & SELLERS, LLC, a Nebraska limited

liability company d/b/a Assist2Sell, and JULIE CARPER, request this Honorable Court to enter

judgment in their favor and against the Defendants, COLDWELL BANKER TOWN & COUNTRY

REALTY OF KEARNEY, LLC, a Nebraska limited liability company d/b/a Coldwell Banker, BETTY

WARREN, MATTHEW MEISTER, KERRY PEARSON, WIEBUSCH & ASSOCIATES, INC., a Nebraska

corporation d/b/a Century 21 Midlands, SOBATKA, ROPER, SCHUMACHER & COMPANY and NP

REALTY, INC., a Nebraska corporation d/b/a NP Realty for an amount to exceed FIVE HUNDRED

THOUSAND DOLLARS ($500,000.00), plus a recoupment of all costs expended in prosecuting

this action, and any and all further relief as this court deems appropriate, including punitive

damages.

### PLAINTIFFS DEMAND TRIAL BY JURY

/s/ Bernie Glaser, Esq.
Attorney for Plaintiffs

Bernie Glaser, Esq. (#11521 (NE))
GLASER LAW
411 South 13th Street, Suite 327
Lincoln, NE 68508
(402) 435-4411
Bernieglaser@windstream.net

David G. Sigale, Esq. (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com
*Pro hac vice* Application Pending

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned, Julie Carper, individually and as authorized representative of Progressive Buyers & Sellers, LLC, certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certify as aforesaid that thy verily believe the same to be true.

_____/s/ Julie Carper_____

Julie Carper, individually and
Authorized representative of
Progressive Buyers & Sellers, LLC

Bernie Glaser, Esq. (#11521 (NE))
GLASER LAW
411 South 13th Street, Suite 327
Lincoln, NE 68508
(402) 435-4411
Bernieglaser@windstream.net

David G. Sigale, Esq. (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com
*Pro hac vice* Application Pending